IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Nalani Kalawe,<br><br>   Plaintiff,<br><br>v.<br><br><br>Medical University Hospital Authority, Cherxa Vue, and Bradley Wagoner,<br><br>   Defendants. | Case No.:<br><br>**COMPLAINT**<br>Jury Trial Requested |

## INTRODUCTION

  Plaintiff Nalani Kalawe, by and through her undersigned counsel, brings the Causes of Action of Race Discrimination, Racially Hostile Work Environment, and Retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, Breach of Contract, Gross Negligence, and Negligent Supervision against Defendant Medical University Hospital Authority. The Plaintiff also brings forth the Cause of Action of Civil Conspiracy as to Defendants Cherxa Vue and Bradley Wagoner, in their individual capacities, based on the following allegations.

## ADMINISTRATIVE CHARGE

1. Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

   a. Plaintiff timely and fully complied with, and exhausted, Defendant Medical University Hospital Authority's internal grievance procedures pursuant to Defendant's policies.

   b. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 24, 2025.

    c. Plaintiff received a Notice of Right to Sue from the EEOC on September 18, 2025.

    d. Plaintiff has timely filed this action within (90) days from the date on which she received her Notice of Right to Sue as described in Paragraph 1(c).

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, and 42 U.S.C. Section 2000(e) et. seq., this being a proceeding to enforce rights and remedies secured under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as is based on State law.

3. Venue is proper in the Charleston Division, because the Causes of Action arose in Charleston County, which is therein the Charleston Division. The acts and practices complained of occurred in Charleston County and Charleston County is where Defendants the Medical University Hospital Authority and the Medical University of South Carolina do business and where the Individual Defendants are situated, do business, and may be found.

## PARTIES

4. Plaintiff Nalani Kalawe (hereinafter, "Plaintiff") is a citizen of the United States and resides in Charleston County, South Carolina. Plaintiff was formerly employed by Defendant Medical University Hospital Authority, who is affiliated with Defendant Medical University of South Carolina ("MUSC"), at all times relevant to this Complaint.

5. Defendant Medical University Hospital Authority (hereinafter, "Defendant MUHA") is a public hospital authority and governmental instrumentality of the State of South Carolina, created pursuant to South Carolina law, that operates as a nonprofit healthcare organization. Defendant MUHA operates the hospitals and clinical facilities affiliated with the Medical

University of South Carolina. Defendant MUHA maintains its principal place of business and its agents, employees, officers, and property in Charleston County, South Carolina. At all times relevant to this Complaint, Defendant MUHA was acting by and through its agents, servants, and employees.

6. Defendant Cherxa Vue (hereinafter, "Defendant Vue") is an employee of Defendant MUHA. Upon information and belief, Defendant Vue resides in Charleston County, South Carolina.

7. Defendant Bradley Wagoner (hereinafter, "Defendant Wagoner") is an employee of Defendant MUHA. Upon information and belief, Defendant Vue resides in Charleston County, South Carolina.

## FACTS

8. Plaintiff is a 52-year-old African American female who was formerly employed by Defendant MUHA from April 1, 2016, until her untimely departure on February 7, 2025.

9. Throughout her nearly nine-year tenure with Defendant MUHA, Plaintiff served in various roles, including as an Educator for six years, and eventually ascended to the role of Operations Manager II – Health, attesting to her hard work and diligence. She consistently received positive annual performance evaluations and ratings during her tenure.

10. Plaintiff served in the role of Operations Manager II – Health from November 2023 until her termination.

11. Plaintiff's responsibilities as Operations Manager II included, but were not limited to, supervising personnel; managing departmental staff; planning, organizing, facilitating, monitoring, and evaluating departmental operations; establishing operating procedures; ensuring regulatory compliance; and increasing departmental productivity.

12. By accepting employment with MUHA, Plaintiff entered into an employment relationship governed by MUHA's policies and procedures, including express and implied contractual protections against race discrimination, harassment, retaliation, unequal pay, and hostile work environments, as well as policies governing performance management and position elimination.

13. Throughout her employment, Plaintiff worked under the supervision of several different supervisors at various times, including Regina Randall (African American female) (hereinafter, "Ms. Randall"), who served as Defendant MUHA's Executive Director of Sterile Processing, and Defendant Vue (Mongolian male) who succeeded Ms. Randall.

14. Defendant Vue served as Plaintiff's direct supervisor from April 2024 up until Plaintiff's wrongful termination.

15. Under Plaintiff's prior supervisors, Plaintiff consistently received positive performance evaluations, experienced no disciplinary issues, and was treated as a valued member of management. In stark contrast, once Defendant Vue became Plaintiff's supervisor, Plaintiff was subjected to unjustified scrutiny, marginalization, and adverse treatment unique to that supervisory relationship.

16. Specifically, Plaintiff experienced a clear, sustained, and escalating pattern of targeting by Defendant Vue beginning immediately upon his assumption of supervisory authority over her.

17. Under Defendant Vue's supervision, Plaintiff was questioned by Defendant MUHA's Human Resources ("HR") Department to provide a video regarding the employment of Ms. Randall.

18. Upon information and belief, Plaintiff was requested to provide the video because Defendants anticipated that Ms. Randall might initiate legal action against Defendant MUHA. Defendant Vue, erroneously believing that Plaintiff was withholding the video, pressured her to produce it with the intent to use it as a purported defense against any potential claims by Ms. Randall.

19. In addition to Defendant Vue, Defendant MUHA employee Defendant Wagoner (Caucasian male), who served as a Human Resources Representative, also played a major part in pressuring Plaintiff to produce the alleged video. In fact, Defendant Wagoner took the lead in questioning Plaintiff about the video, even encouraging Plaintiff to provide some form of incriminating evidence against Ms. Randall, which Plaintiff did not possess.

20. In response, Plaintiff informed both her new supervisor, Defendant Vue, and her HR personnel, Defendant Wagoner, that she did not have the requested evidence to support Defendants' position against Ms. Randall. Neither Defendant Vue nor Defendant Wagoner were receptive of Plaintiff's perceived lack of support or her denial that she possessed a video that could back their position.

21. Plaintiff's revelation and refusal to assist Defendants in their efforts against Ms. Randall were immediately met with racial animus directed toward her by Defendant Vue and Defendant Wagoner.

22. In a close proximity of time, immediately following Plaintiff consistently, in good faith, warding off Defendants' questions regarding Ms. Randall, Plaintiff was targeted by Defendants Vue and Wagoner and subjected to daily harassment on the basis of her race while attempting to carry out her managerial duties.

23. Defendants Vue and Wagoner subjected Plaintiff to a racially hostile work environment through heightened surveillance, micromanagement, disparaging and demeaning communications, hostile emails, and other conduct designed to damage her professional credibility, create confusion regarding her job duties, and make her appear incompetent to peers and subordinates. They also enlisted other staff members to isolate Plaintiff and participate in efforts to diminish her role.

24. In the exercise of his supervisory authority, Defendant Vue harassed Plaintiff regarding her entitled time off and fabricated false allegations about her job performance and conduct. He then reported these defamatory claims to Defendant MUHA's HR Department, exacerbating retaliatory treatment and harming Plaintiff's professional reputation.

25. Defendant MUHA employed and supervised Defendant Vue but failed to adequately monitor or control his conduct, despite clear warning signs of misconduct.

26. Plaintiff objected to Defendant Vue's harassment and communicated this to him. Plaintiff also complained to Defendant MUHA's and MUSC's HR Departments including Defendant Wagoner, regarding the discrimination and racially hostile work environment. Such complaints included, but were not limited to, complaints on June 10, 2024, August 22, 2024, September 5, 2024, and January 13, 2025.

27. Plaintiff's complaints were met with indifference and continued racial animus as Defendant Wagoner did nothing to stop the harassment or protect Plaintiff in any way. Defendant Wagoner and other MUHA personnel failed to investigate, intervene, provide Plaintiff with support, or discipline Defendant Vue, allowing Defendant Vue's retaliatory environment to persist unchecked.

28. In fact, Plaintiff experienced direct retaliation to her complaints when Defendants Vue and Wagoner's racial animus resulted in Plaintiff receiving unwarranted write-ups three times within a short period of time subsequent to her reports of discrimination and a hostile work environment.

29. Defendant MUHA's HR knowingly condoned the racial animus toward Plaintiff, in response to Plaintiff's support of her former African American supervisor.

30. Defendants' failure to investigate or discipline Defendant Vue, despite knowing the severity and persistence of his conduct, demonstrates a reckless disregard for Plaintiff's rights and well-being.

31. The conduct goes beyond ordinary negligence, showing a conscious indifference to the foreseeable harm that their supervisory failures would cause Plaintiff.

32. The racially hostile work environment caused Plaintiff extreme stress, anxiety, and required medical attention.

33. On January 27, 2025, Plaintiff received a notification that her position would be eliminated effective February 7, 2025, from Defendant MUHA's HR and Defendant Vue, with no just cause or explanation other than "The position was no longer needed anymore."

34. Defendant MUHA's Position Elimination Policy requires consideration of factors including work performance, disciplinary history, longevity, certifications, licensing, and versatility. None of these factors were considered in Plaintiff's case.

35. Upon information and belief, Defendant Vue affirmatively recommended the elimination of Plaintiff's position, which further calls into question the legitimacy of MUHA's stated rationale, particularly given that MUHA was reportedly behind in its workload and in need of qualified staff.

36. Plaintiff's Operations Manager II position was created by Ms. Randall to meet operational needs.

37. Defendants Vue and Wagoner engaged in a coordinated effort to eliminate Plaintiff's position, motivated by racial animus toward both Plaintiff and her former supervisor, Ms. Randall, rather than any legitimate business need.

38. On October 28, 2024, Defendant Vue stated, "I have never heard of any SPD Quality/Educator Manager in my career. I am still confused and unsure of what her role should be," demonstrating a deliberate effort to question the legitimacy of Plaintiff's position and justify its elimination despite her proven performance and the operational needs of Defendant MUHA.

39. On November 1, 2024, Defendant Vue further stated, "I cannot find any reason for this job. I am unsure how to 'create job' for this position. Nalani's position is not needed for SPD," reflecting a deliberate effort to justify elimination of Plaintiff's role.

40. On November 1, 2024, Defendant Wagoner commented, "Za [Defendant Vue] is having trouble saying what Nalani [Plaintiff] does. There is more history with this position as well. It was created without my involvement by Regina Randall…," confirming the collaboration between Defendants to target Plaintiff and undermining any claim that the future position elimination which followed shortly thereafter was based on legitimate business considerations.

41. Notably, at no point was Plaintiff placed on a Performance Improvement Plan ("PIP") or provided any formal opportunity to address performance concerns, further demonstrating that the decision to eliminate her position was pretextual. These statements and omissions

collectively reflect Defendants' coordinated effort to remove Plaintiff based on racial bias and retaliatory motives, rather than legitimate operational needs.

42. Simultaneously to Plaintiff's position being eliminated, a new managerial position was posted by Defendants on February 3, 2025, closely mirroring Plaintiff's eliminated role. Though the position was not posted within Defendant MUHA's internal system, Defendant MUHA was responsible for initiating the external posting. The timing of the posting further contradicts the stated rationale for Plaintiff's position elimination.

43. Despite Plaintiff consistently excelling in her role throughout her employment tenure, demonstrating exceptional performance and a strong commitment to her job responsibilities, she was never offered, nor encouraged, to apply for the position of Manager of Sterile Processing or any other managerial position within Defendant MUHA.

44. Rather than being offered the opportunity to transition into a similar position within the organization that would align with her expertise, she was instead presented solely with the opportunity to apply for positions that amounted to demotions. These positions not only failed to recognize her extensive qualifications, but also disregarded the possibility of retaining her in a role suitable to her experience. This experience underscores her leadership capabilities and qualifications, and highlights the unjust and discriminatory nature of the elimination.

45. Under Defendant MUHA policy, Plaintiff should have been given the opportunity to apply for newly posted positions. However, the replacement position which mirrored her former role was not posted internally, and Plaintiff was unaware of its existence, effectively preventing her from applying.

46. As a result, Plaintiff was left with no viable employment options other than termination. Defendants relied on the pretextual write-ups previously issued by Defendant Vue, issued in retaliation for Plaintiff's complaints, to justify her termination, furthering their unjust and discriminatory actions.

47. Therefore, Plaintiff contends the conduct of Defendants Vue and Wagoner, combined with MUHA's knowledge and inaction, demonstrates a pattern of race discrimination, retaliation, a racially hostile work environment, policy violations, gross negligence, negligent supervision, and civil conspiracy against Plaintiff, all in violation of Title VII. of the Civil Rights Act of 1964, as amended, and other applicable State and Federal law.

**FIRST CAUSE OF ACTION**
*RACE DISCRIMINATION (TITLE VII)*
**(Against Defendant Medical University Hospital Authority (MUHA))**

48. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

49. Plaintiff is an African American female.

50. Defendants discriminated against Plaintiff on the basis of her race by subjecting her to differential treatment, including but not limited to: targeting and harassment by Defendant Vue, derogatory and demeaning treatment, pretextual write-ups, and ultimately the elimination of her position while creating a substantially identical role filled by non-African American employees.

51. Plaintiff was qualified for her position, received positive performance evaluations, and met or exceeded all legitimate work expectations.

52. The adverse actions taken against Plaintiff were motivated by her race and were not based on legitimate business reasons.

53. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered economic loss, emotional distress, reputational harm, and other damages.

54. Defendants' actions constitute intentional race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

<u>**SECOND CAUSE OF ACTION**</u>

*RETALIATION (TITLE VII)*

**(Against Defendant Medical University Hospital Authority (MUHA))**

55. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

56. Plaintiff engaged in protected activity by:

    a. Reporting discriminatory conduct and racial animus by Defendant Vue;

    b. Refusing to participate in efforts to create false narratives against Ms. Randall; and

    c. Complaining to MUHA Human Resources about the racially hostile work environment.

57. In retaliation for engaging in these protected activities, Defendants:

    a. Issued unwarranted disciplinary write-ups;

    b. Targeted Plaintiff with daily harassment and micromanagement;

    c. Eliminated Plaintiff's position pretextually; and

    d. Offered only demotion positions inconsistent with her experience and qualifications.

58. These retaliatory actions would deter a reasonable employee from reporting discrimination.

59. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered economic loss, emotional distress, and reputational harm.

60. Defendants' actions constitute unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

### THIRD CAUSE OF ACTION
*RACIALLY HOSTILE WORK ENVIRONMENT (TITLE VII)*
**(Against Defendant Medical University Hospital Authority (MUHA))**

61. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

62. Defendants subjected Plaintiff to a racially hostile work environment, including:

    a. Daily harassment by Defendant Vue;

    b. Demeaning communications;

    c. Defamatory reporting to HR;

    d. Marginalization and false narratives about her work; and

    e. Targeting in response to complaints and refusal to participate in false reporting against Ms. Randall.

63. The harassment was severe and pervasive, altering the terms and conditions of Plaintiff's employment.

64. Defendant MUHA, through Defendant Wagoner and other HR personnel, knew of the harassment and failed to take corrective action.

65. As a direct and proximate result of the hostile work environment, Plaintiff has suffered emotional distress, reputational harm, and economic loss.

66. Defendants' actions constitute a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

### FOURTH CAUSE OF ACTION
*BREACH OF CONTRACT*

**(Against Defendant Medical University Hospital Authority (MUHA))**

67. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

68. Plaintiff had an employment relationship with Defendant MUHA governed by express and implied policies, including those protecting against race discrimination, harassment, retaliation, and ensuring fair application of position elimination policies.

69. Defendants breached these contractual obligations by:

    a. Failing to protect Plaintiff from a racially hostile work environment;

    b. Failing to follow the MUHA position elimination policy, including ignoring factors such as work performance, disciplinary history, and versatility;

    c. Failing to provide Plaintiff with the opportunity to apply for positions for which she was qualified;

    d. Failing to investigate complaints of harassment or retaliatory conduct; and

    e. Terminating Plaintiff pretextually and contrary to internal policies.

70. As a direct and proximate result of Defendants' breach, Plaintiff has suffered economic loss and other damages.

<u>**FIFTH CAUSE OF ACTION**</u>
*GROSS NEGLIGENCE*
**(Against Defendant Medical University Hospital Authority (MUHA))**

71. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

72. Defendant MUHA owed Plaintiff a duty to provide a safe and lawful work environment, free from discrimination, harassment, retaliation, and other unlawful employment practices, and to ensure compliance with its own employment policies.

73. Defendant MUHA, through its HR department and management personnel, including Defendant Wagoner, knew or should have known that Defendant Vue was engaging in discriminatory, harassing, and retaliatory conduct toward Plaintiff, as well as toward other employees, yet failed to take reasonable steps to prevent or stop such conduct.

74. Despite Plaintiff's multiple complaints of racial animus and harassment, Defendants consciously disregarded the foreseeable risk of harm, allowing a racially hostile and retaliatory work environment to persist.

75. Defendants' actions and inactions constitute a reckless indifference to Plaintiff's rights, well-being, and career, which goes beyond ordinary negligence.

76. As a direct and proximate result of Defendant MUHA's grossly negligent conduct, Plaintiff suffered economic loss, emotional distress, reputational harm, and other damages.

77. Defendant MUHA's gross negligence warrants compensatory and punitive damages as permitted by law.

### SIXTH CAUSE OF ACTION
*NEGLIGENT SUPERVISION*
**(Against Defendant Medical University Hospital Authority (MUHA))**

78. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

79. Defendant MUHA, as Plaintiff's employer, had a duty to properly supervise and control its employees, including Defendant Vue, to prevent harassment, discrimination, retaliation, and other unlawful conduct.

80. Defendant MUHA breached this duty by failing to monitor, correct, or discipline Defendant Vue, despite having knowledge of his discriminatory, harassing, and retaliatory conduct.

81. Defendants allowed Defendant Vue to:

      a. Harass Plaintiff regarding time off she was entitled to;

      b. Fabricate false allegations about her job performance and behavior;

      c. Report defamatory allegations to HR;

      d. Create a racially hostile work environment;

      e. Pressure Plaintiff in connection with matters relating to Ms. Randall; and

      f. Affirmatively recommend Plaintiff's position elimination and effectively eliminate her role.

82. Defendant MUHA's failure to supervise Defendant Vue properly directly enabled the continuation of retaliatory and discriminatory practices, ultimately resulting in Plaintiff's pretextual termination, denial of fair employment opportunities, and emotional, reputational, and economic harm.

83. As a direct and proximate result of Defendant MUHA's negligent supervision, Plaintiff has suffered damages including, but not limited to, economic loss, emotional distress, and reputational harm.

84. Plaintiff is entitled to recover actual, compensatory, and punitive damages as permitted by law.

## SEVENTH CAUSE OF ACTION
### *CIVIL CONSPIRACY*
### (Against Defendants Cherxa Vue and Bradley Wagoner)

1. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

2. Defendants Vue and Wagoner entered into an agreement to unlawfully eliminate Plaintiff's position, retaliate against her for protected activity, and subject her to a racially hostile work environment.

3. In furtherance of this conspiracy, Defendants:

    a. Coordinated false reporting to HR;

    b. Directed, encouraged, or facilitated retaliatory write-ups;

    c. Conspired to create pretextual grounds for termination; and

    d. Sought to marginalize Plaintiff and interfere with her employment opportunities.

4. Defendants acted with racial animus and intent to injure Plaintiff economically and reputationally.

5. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered economic loss, emotional distress, reputational harm, and other damages.

## **JURY TRIAL REQUESTED**

6. Plaintiff requests a jury trial.

## **PRAYER FOR RELIEF**

7. **WHEREFORE**, Plaintiff prays that this Honorable Court declares that Defendants' actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

    a. In favor of Plaintiff and against Defendants for all causes of actions herein alleged in an amount which is fair, just and reasonable, and for actual, compensatory, special, and punitive damages;

    b. Issuing an injunction enjoining Defendants, their agents, employees, successors, attorneys and all persons acting in concert or participation with them, and at their direction, from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of Title VII of the Civil Rights Act of 1964, as amended (including Race Discrimination,

Racially Hostile Work Environment, and Retaliation), Breach of Contract, Gross Negligence, Negligent Supervision, Civil Conspiracy, and the common laws of the State of South Carolina.

c. Awarding Plaintiff actual and compensatory damages for each Cause of Action contained herein as appropriate, including but not limited to: mental anguish, emotional distress, pain and suffering, harm to Plaintiff's present and future economic opportunities, back pay, front pay, and future earnings with cost-of-living adjustments, fringe benefits, retirement benefits, and prejudgment interest;

d. Awarding Plaintiff her costs and expenses in this action, including reasonable attorneys' fees, expert fees, and other litigation expenses; and

e. Granting such other and further relief as this Court may deem just and proper to afford complete relief to the Plaintiff for the injuries and losses she has suffered.

Respectfully Submitted,

_____s/Donald Gist_____
Donald Gist (7178)
*GIST LAW FIRM, P.A.*
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

*Attorney for Plaintiff*

December 16, 2025